IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LORRAINE G. MOORE, | * | |
| Plaintiff, | * | |
| | | Case No. TJS-24-2891 |
| v. | * | |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | * | |
| | * | |
| Defendant. | | |
| * * * * * * | | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant Washington Metropolitan Area Transit Authority's ("WMATA") Motion for Summary Judgment ("Motion") (ECF No. 15).[1] Having considered the submissions of the parties (ECF Nos. 15, 16 & 17), I find that a hearing is unnecessary. Loc. R. 105.6. For the following reasons, the Motion will be granted.

**I.     Background**

Unless otherwise noted, the following facts are not in dispute. To the extent any facts are in dispute, they will be considered in the light most favorable to Plaintiff Lorraine G. Moore ("Moore"), as the non-moving party. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019).

This lawsuit arises from injuries Moore alleges she suffered when she fell on a wheelchair lift while exiting a WMATA MetroAccess van on October 13, 2022.

The MetroAccess van is equipped with a wheelchair lift to assist passengers boarding and exiting the van. The wheelchair lift is controlled by the van operator, who stands outside of the

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF No. 9.

rear door of the van and uses a handheld pendant control to move the lift. ECF No. 15-7 at 30-33. The control has two rocker switches: a "fold/unfold" switch that the operator presses to the left to fold the lift platform into the vertical stowed position and to the right to unfold the lift to its horizontal position; and an "up/down" switch that the operator presses to the left to raise the lift and to the right to lower the lift. *Id.* When the operator releases either switch, the lift stops moving. ECF No. 16-1 at 2. To assist a passenger boarding the van, the operator must use the fold/unfold switch to unfold the wheelchair lift until it is horizontal and flush with the floor of the van. ECF No. 15-7 at 30-33. The operator then uses the up/down switch to lower the lift all the way to the ground for the passenger to board the lift. *Id.* Once the passenger is on the lift, the operator uses the up/down switch to raise the lift until the lift is flush with the floor of the van, and then the passenger moves off the lift and onto the van. *Id.* When the passenger is off the lift, the operator uses the fold/unfold switch to fold the lift back into its stowed position. *Id.* This sequence is completed in reverse to unload a passenger from the van: the operator unfolds the lift, the passenger boards the lift, the operator lowers the lift all the way to the ground, the passenger exits the lift, and then the operator raises and folds the lift back into its stowed position. *Id.*

On October 13, 2022, MetroAccess van operator Antonio Henson ("Henson") picked Moore up from her residence in Upper Marlboro to transport her to Kaiser Permanente. ECF No. 16-1 at 2. Moore boarded the van using the wheelchair lift without incident. *Id.* Henson picked up another passenger, who also boarded using the wheelchair lift without incident. *Id.* When they arrived at Kaiser Permanente, Henson again operated the lift from outside of the van to assist Moore in exiting the van. *Id.* Henson unfolded the lift until it was horizontal, and Moore boarded it. *Id.* Henson began to lower the lift, but Moore fell before the lift descended all the way to the ground. *Id.* Moore alleges that the lift jolted while she was on it, which is what caused her to fall.

*Id.* at 2-3. Although she could not see the pendent control that Henson used to operate the lift from her vantage point, Moore infers that Henson either let go of the "down" button on the rocker switch or pressed the "up" button. *Id.* WMATA alleges that Henson continuously held the "down" button. ECF No. 15-1 at 4.

Moore filed this lawsuit on October 10, 2024. ECF No. 1. Moore argues that WMATA is liable for her injuries because the incident was caused by Henson's negligence in operating the lift.

Under the WMATA Compact, WMATA is liable for torts that its employees commit "in the conduct of any propriety function, in accordance with the law of the applicable signatory (including rules on conflict of laws)." Md. Code, Transp. § 10-204(80); *see Robinson v. Washington Metro. Area Transit Auth.*, 774 F.3d 33, 38 (D.C. Cir. 2014). Maryland adheres to the *lex loci delicti* rule to determine the applicable law in tort actions. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744 (2000). Under this rule, the "substantive tort law of the state where the wrong occurs governs." *Hauch v. Connor*, 295 Md. 120, 123 (1983). Because the alleged tort took place in Maryland, the law of Maryland governs Moore's negligence claim.

**II.     Analysis**

**A.     Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented, and summary judgment should be denied. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest upon the mere allegations or denials of its pleading but instead must cite to "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

**B.     Negligence**

To prevail on a claim of negligence in Maryland, a plaintiff must prove "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999) (internal quotation marks omitted).

WMATA argues Moore's claim fails because (1) she did not provide expert testimony, which is required to establish the applicable standard of care; and (2) she proffered no evidence that WMATA or Henson caused or contributed to her fall.[2] ECF Nos. 15-1 & 17. Moore argues

---

[2] WMATA also argues in its Motion that Moore proffered no evidence that WMATA was on notice of a dangerous condition that caused or contributed to her fall, and that Moore's claims arising from WMATA's maintenance and design decisions were barred by WMATA's sovereign

4

that (1) expert testimony is not required to establish the standard of care; and (2) she has provided sufficient evidence to establish a genuine issue of material fact regarding the cause of her fall. ECF No. 16-1.

"Expert testimony is required when the subject matter is so particularly related to some science or profession that it is beyond the ken of the average layman." *Pryszmont v. Allstate Veh. and Prop. Ins. Co.*, No. JMC-22-2782, 2024 WL 3090384, at *4 (D. Md. June 21, 2024) (quoting *Adams v. NVR Homes, Inc.*, 142 F. Supp. 2d 649, 654 (D. Md. 2001)). For this reason, "[w]here the plaintiff alleges negligence by a professional, expert testimony is generally necessary to establish the requisite standard of care owed by the professional."

If the alleged negligence "is so obvious that the trier of fact could easily recognize that such actions would violate the applicable standard of care," such as a dentist extracting the wrong tooth or a doctor leaving an instrument in a patient's body, then expert testimony may not be required. *Schultz v. Bank of America, N.A.*, 413 Md. 15, 29 (2010). However, those obvious situations are the exception to the general rule recognized under Maryland law that expert testimony is required to establish professional standards of care.

The average layperson does not know how a wheelchair lift on a common carrier van should be operated. *Levai v. Washington Metro. Area Transit Auth.*, No. TJS-21-1118, 2022 WL 17325624, at *3 (D. Md. Nov. 28, 2022); *Bush v. Washington Metro. Area Transit Auth.*, No. JEB--19-930, 2020 WL 921419, at *4 (D.D.C. Feb. 26, 2020).

---

immunity. ECF No. 15-1. However, Moore clarifies in her response that her claim is based only on Henson's alleged negligence in operating the lift and does not implicate the design or maintenance of the van or lift, so those arguments are not relevant. ECF No. 16-1.

Because Moore has failed to introduce expert testimony to establish the applicable standard of care, her negligence claim must fail. The Court must enter summary judgment for WMATA. The Court declines to address the parties' arguments regarding causation.

### C. Spoliation Sanctions

Moore also alleges that WMATA failed to produce the videotape she requested of the incident. She therefore requests that the Court deny the Motion and consider other appropriate sanctions against WMATA for spoliation of evidence. ECF No. 16-1 at 8-9. WMATA states that the MetroAccess van is equipped with a "Drive Cam" that captures real-time video images, but the footage of the incident was never saved and downloaded by WMATA personnel. ECF No. 17 at 6.

A party's "destruction or material alteration of evidence . . . or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation" may amount to spoliation. *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). To impose sanctions for spoliation, a party must show,

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Membreno v. Atlanta Restaurant Partners, LLC*, 338 F.R.D. 66, 71 (D. Md. 2021). "This standard applies when a party is seeking any form of sanctions for spoliation, not just an adverse jury instruction." *Sampson v. City of Cambridge, Md*., 251 F.R.D. 172, 179 (D. Md. 2008).

The first element that a party seeking spoliation sanctions must prove is a duty to preserve the potentially relevant evidence. "The duty to preserve evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the

evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591. Once a party reasonably anticipates litigation, it is obligated to implement a "litigation hold" to ensure that potentially relevant evidence under its control is identified, located, and preserved for use in the anticipated litigation. *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 511 (D. Md. 2009); *see also First Mariner Bank v. Resolution Law Group, P.C.*, No. MJG-12-1133, 2014 WL 1652550, at *8 (D. Md. Apr. 22, 2014).

The second element that the moving party must prove is culpability. "In the Fourth Circuit, for a court to impose some form of sanctions for spoliation, any fault—be it bad faith, willfulness, gross negligence, or ordinary negligence—is a sufficiently culpable mindset." *Turner v. United States*, 736 F.3d 274 (4th Cir. 2013) (citing *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 529 (D. Md. 2010)). In the context of spoliation, ordinary negligence is the failure to identify, locate, and preserve evidence, where a reasonably prudent person acting under like circumstances would have done so. *See In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 519 (S.D. W. Va. 2014). A finding of gross negligence requires a similar showing as ordinary negligence, but to a greater degree. *Id.* Willfulness and bad faith will only be found where a party has engaged in "intentional, purposeful, or deliberate conduct." *Id.* (quoting *Victor Stanley*, 269 F.R.D. at 529). While bad faith requires the destruction of evidence "for the purpose of depriving the adversary of the evidence," *Goodman*, 632 F. Supp. 2d at 520, willfulness only requires a demonstration of intentional or deliberate conduct resulting in spoliation. *Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008).

The third element that a party must prove to prevail on a motion for spoliation sanctions is that the spoliated evidence is relevant to her claim. "The test for relevance for purposes of establishing the third element is somewhat more stringent than merely meeting the standard

provided in Federal Rule of Evidence 401." *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008). In the context of spoliation, lost or destroyed evidence is relevant if "a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Victor Stanley*, 269 F.R.D. at 531 (internal citations omitted). In addition, for a court to impose sanctions, "the absence of the evidence must be prejudicial to the party alleging spoliation." *Id.* "Put another way, a finding of 'relevance' for purposes of spoliation sanctions is a two-pronged finding of relevance and prejudice." *Id*. A party is prejudiced by the spoliation of evidence where the party's ability to present its case is compromised as a result of the missing evidence. *Id.* (noting that "[p]rejudice can range along a continuum from an inability to prove claims to little or no impact on the presentation of proof") (internal quotation omitted).

The party seeking sanctions has the burden of establishing "a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause." *Sampson*, 251 F.R.D. at 179 (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90 (D. Co. 1996). When a party alleging spoliation shows that the alleged spoliator acted willfully or in bad faith in failing to preserve the evidence, "the relevance of that evidence is presumed in the Fourth Circuit." *Victor Stanley*, 269 F.R.D. at 532. Even where the relevance of spoliated evidence is presumed, however, "the spoliating party may rebut this presumption by showing that the innocent party has not been prejudiced." *Id.* (internal quotation omitted).

Here, WMATA reasonably should have known that the video footage may be relevant to anticipated litigation as a result of Moore's fall and injury while on the wheelchair lift, and a duty to preserve the footage attached. A prudent person acting under like circumstances would have saved and downloaded the Drive Cam footage from the MetroAccess van in anticipation of future

litigation. The first and second elements to impose spoliation sanctions are therefore satisfied, although Moore provided no evidence that WMATA acted with any greater culpability than ordinary negligence. However, Moore falls short of her burden by failing to prove the third element, relevance and prejudice. Moore argues that "[t]he videotape is likely to provide objective evidence that could corroborate or refute the testimonies and claims made by both parties," but she provides no particularized evidence whatsoever that the lost video footage would have supported her claim. ECF No. 16-1 at 9. And even if the lost video footage did support her claim by showing that Henson's conduct caused her fall, it would not have mattered here. Moore would not be prejudiced by any spoliation because she failed to establish the standard of care and therefore cannot make out a claim of negligence. Moore did not establish that she was prejudiced by WMATA's spoliation of evidence, therefore sanctions are not appropriate.

### III.   CONCLUSION

For the reasons set forth above, WMATA's motion for summary judgment (ECF No. 15) is **GRANTED**. An accompanying Order follows.

<u>May 30, 2025</u>　　　　　　　　　　　　　　　　　　　<u>       /s/       </u>
Date　　　　　　　　　　　　　　　　　　　　　　　　Timothy J. Sullivan
　　　　　　　　　　　　　　　　　　　　　　　　　　Chief United States Magistrate Judge

9